IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 20-1019
_____

**FILED**

**November 10, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BERKELEY COUNTY COUNCIL,
Defendant Below,
Petitioner,

v.

GOVERNMENT PROPERTIES INCOME TRUST LLC,
Plaintiff Below,
Respondent.

_____

AND

_____

No. 20-1022
_____

BERKELEY COUNTY COUNCIL,
Defendant Below,
Petitioner,

v.

MARTINSBURG IRS OC, LLC,
Plaintiff Below,
Respondent.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Laura V. Faircloth, Judge
Civil Action Nos. CC-02-2019-AA-7 and CC-02-2019-AA-8

REVERSED AND REMANDED

_____

Submitted: September 27, 2022
Filed: November 10, 2022

Jeffrey T. Mauzy, Esquire
Anthony J. Delligatti, Esquire
Martinsburg, West Virginia
Counsel for Petitioners

Eric Hulett, Esquire
Christopher M. Hunter, Esquire
Jackson Kelly PLLC
Charleston, West Virginia

AND

Edward F. Hirshberg, Esquire
Ryan Law Firm, PLLC
Pittsburgh, Pennsylvania
Counsel for Respondent

Joshua A. Cottle, Esquire
Kimberly S. Croyle, Esquire
Howard E. Seufer, Jr.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Amicus Curiae Board of
Education of the County of Berkeley

JUSTICE ARMSTEAD delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.    "'It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear.' Syl. Pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983)."  Syl. Pt. 1, *Musick v. University Park at Evansdale, LLC*, 241 W. Va. 194, 820 S.E.2d 901 (2018).

2.    "Arbitrary or unjust action by an assessor in fixing the value of land must be shown by clear and cogent proof in order that the complaining taxpayer may be given relief from an allegedly excessive valuation."  Syl. Pt. 2, *Bankers Pocahontas Coal Co. v. County Court of McDowell County.*, 135 W. Va. 174, 62 S.E.2d 801 (1950), *overruled on other grounds by In re Kanawha Val. Bank*, 144 W. Va. 346, 109 S.E.2d 649 (1959).

3.    "'A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such assessment is erroneous.' Syllabus Point 5, in part, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)."  Syl. Pt. 10, *Mountain America, LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768, 772 (2009).

i

4.    A party defending an assessment before a Board of Assessment Appeals is the appropriate party, and thus a necessary party, to an appeal of such assessment to the circuit court.

5.    "Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion."  Syl. Pt. 5, *In re Assessment Against American Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000).

ARMSTEAD, Justice:

In these two consolidated appeals, The Berkeley County Council ("Petitioner") appeals the judgments of the Circuit Court of Berkeley County that reversed the orders issued by Petitioner while sitting as the Berkeley County Board of Assessment Appeals ("Board").[1] These orders arose from appeals of the ad valorem assessments of properties owned by Government Properties Income Trust LLC ("Government Properties") and Martinsburg IRS OC, LLC ("Martinsburg IRS OC") (collectively, "Taxpayers") as determined by the Berkeley County Assessor ("Assessor") for the 2019 tax year.[2] Petitioner appealed both rulings of the circuit court to this Court, raising six total issues across both appeals.[3] In our review, we believe these issues encompass two

---

[1] The Legislature has repealed the provisions establishing Boards of Assessment Appeals. *See* 2021 W. Va. Acts, c.261, eff. July 1, 2022. We cite to the 2010 version of West Virginia Code § 11-3-24b throughout this opinion as this provision governs these consolidated appeals.

Under the 2010 version of the statute, county commissions/councils are statutorily required to sit as Boards of Assessment Appeals. *See* W. Va. Code § 11-3-24b(a).

[2] As discussed in more detail below, the Berkeley County Assessor was not named as a party to the appeal from the Board to the circuit court.

[3] The specific issues raised in the appeals were, in 20-1019: 1) The Circuit Court erred in reducing the Berkeley County Assessor's assessment, because the property owner failed to join an indispensable party, the Berkeley County Assessor, who assessment was contested. 2) The Circuit Court erred by reversing the Board of Assessment Appeals, by finding the Assessment erroneous, when it was not, adopting the taxpayer's appraisal, that violated West Virginia law. Likewise, in 20-1022, the issues raised were: 1) The Circuit Court abused its discretion by reducing the Berkeley County Assessor's Assessment without joining the Berkeley County Assessor, whose assessment is contested. (continued . . .)

1

overarching questions, which are: 1) whether the Assessor was an indispensable party to the actions and should have been named in the Taxpayers' appeals to the circuit court; and, 2) whether the circuit court erred in determining the assessments as affirmed by the Board were invalid.[4]  Although these two appeals deal with different pieces of property, owned by two different entities, the same issues are common to both appeals.  Thus, we consolidated these two matters and placed them on the docket for oral argument under Rule 19 of the West Virginia Rules of Appellate Procedure.

After review of the trial transcript and evidence, the briefs and arguments of the parties, and all other matters of record, we find that the circuit court erred in reversing the Board and reverse and remand for further proceedings consistent with this opinion.[5]

---

2) The Circuit Court abused its discretion by a) applying wrong standard of review, b) applying the wrong standard of proof, and c) by finding that the Board of Assessment Appeals erred by not finding that the Assessor violated the law for choosing the cost approach to valuation. 3) The Circuit Court erred when it made the erroneous finding of fact that the Assessor did not take into account all types of depreciation in its appraisal, because the property record card indicates that depreciation was applied. 4) The Circuit Court abused its discretion by adopting the "retrospective leased fee" appraisal conducted by Martinsburg IRS, O.C. LLC's hired appraiser that failed to comply with West Virginia law for valuing commercial property for ad valorem tax purposes.

[4] We would note that the Legislature has repealed the provisions of West Virginia Code § 11-3-25, which contained the process for appeals of Board decisions to circuit court applicable to this appeal.  *See* 2021 W. Va. Acts, c.261, eff. July 1, 2022.  This repeal has no impact upon this matter.  Thus, we cite to the 2014 version of this code section throughout this opinion.

[5] The Court would like to acknowledge the arguments presented in both appeals by the amicus curiae, The Board of Education of the County of Berkeley.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Because of differences in the properties at issue, we will separately set out the facts relating to each.

*A. Government Properties Property*

The Government Properties property is located at 882 TJ Jackson Drive in Falling Waters, West Virginia, contains 4.42 acres, and is comprised of a commercial building containing 37,605 square feet of interior space, which includes a 30,875 square foot computer room/data center. The Assessor assessed the fair market value of this property for the 2019 tax year to be $4,212,200.00, with an assessed value of $2,527,320.00. The Assessor based its valuation upon the cost approach to value,[6] the methodology of which was explained before the Board by John Streett, commercial appraiser for the Assessor:

> Legislative Rule 110 1P was considered and utilized for the 2019 tax year. The legislative rule enumerates a number of elements that shall be considered when doing a commercial appraisal. The majority of those elements are located within

---

[6] There are three approaches to value that may be considered in valuing real estate – cost, income capitalization, and sales comparison. *See* The Appraisal Institute*, The Appraisal of Real Estate* 36-37 (15th ed. 2020). All of these approaches to value are contemplated by the regulations adopted by the West Virginia State Tax Department for appraising commercial and industrial real property. *See* 110 W. Va. C.S.R. § 1P-3.2.1 (2013). We will discuss these approaches in more detail below. All citations to 110 West Virginia Code of State Regulations § 1P are to the 2013 version.

3

> IAS on a property record card.[7]  However, some of the elements are found on the tax map, where others are found on the Certificate of Transfer and Sales Form received from the County Clerk's office.

Additionally, Streett also considered obsolescence in making his appraisal, stating, "functional obsolescence and external obsolescence … were taken into consideration. Based upon the definition of functional obsolescence and economic obsolescence, our office did not believe that any adjustments were needed other than normal depreciation on improvement."[8]  Thus, after considering the applicability of obsolescence, Streett rejected its application.  Further, due to a lack of available data, Streett was unable to develop either the income approach or the comparative sales approach in performing his appraisal, ultimately settling on utilizing the cost approach:

> It is the opinion of the Assessor's Office that there were no valid sales directly comparable to the subject property.  Income approach was also considered, letters were mailed to those properties that were coded 353 office buildings asking for income and expense information.  The one office building that was listed as a valid sale by this office was not returned to this office.  Hence, our office was not able to develop a calculazation [sic] rate.  And since the subject property has a (inaudible), there would be no income (inaudible) for this property for the current tax year, so consequently all three approaches to value were considered.  The cost approach was chosen to be used for the 2019 tax year.

---

[7] "IAS" is the Integrated Assessment System managed by the Tax Commissioner.  It will be discussed in more detail below.

[8] In developing the cost approach to valuation, the Assessor must "consider three (3) types of depreciation: physical depreciation, functional obsolescence, and economic obsolescence."  110 W. Va. C.S.R. § 1P-3.2.1.1.

Government Properties appealed the assessment to the Board which held a hearing on the appeal. At that hearing, Government Properties offered an appraisal, completed by Paul Griffith, which reconciled fair market value for the 2019 tax year at $900,000.00, with an assessed value of $540,000.00. Griffith's appraisal was based upon a reconciliation of the cost and comparative sales approaches to value which used two West Virginia properties – one in Berkeley County and the other in Monongalia County, and two out-of-state properties – one in Allentown, Pennsylvania and the other in Baltimore, Maryland. The Baltimore property was ultimately not considered due to its location in the Baltimore market. Griffith concluded that there was significant functional obsolescence[9] in this building which reduced the value of the subject property by $2,150,000.00. Based upon that determination, Griffith maintained that only 6,000 square feet of the 37,605 square foot building had any value because the rest of the building was functionally obsolete for the purposes of assessment.[10]

---

[9] *The Appraisal of Real Estate* provides that functional obsolescence is "when ongoing change, caused by technological advances or economic and aesthetic trends, renders building layouts and features obsolete to the extent that value is impaired." The Appraisal Institute*, The Appraisal of Real Estate* 232. Functional obsolescence is classified as a depreciation adjustment in the West Virginia State Tax Department's regulations that the Assessor must "consider." *See* 110 W. Va. C.S.R. §§ 1P-3.2.1.1 and 3.5.

[10] It must be noted, however, that the appraisal offered by Government Properties concurred with the Assessor's conclusion regarding obsolescence. "[B]ased on inspection and consideration of this current and/or future use, there does not appear to be any significant items of functional obsolescence."

The Board found the Assessor's assessment to be valid. In so doing, the

Board highlighted the discrepancies between the two appraisals:

> Part of the differences result from the character of the two analyses. The Assessor is required to perform a mass appraisal of properties. Unlike the Taxpayer, it did not perform an individual bank-type appraisal. Where the Taxpayer considered only the 3.40 acres, valued at $480,000, the Assessor correctly assessed the property as 4.42 acres, valued at $1,095,000. The improvements are valued by the Assessor at $3,117,200. The Taxpayer, on the other hand, values the improvements at only $508,635. This surprisingly low appraisal value results from a $2,790,840 physical depreciation and a $2,150,000 functional obsolescence. The Taxpayer argues that of the 37,605 square feet it asserts comprises the building, only 6,000 square feet is functional, while 31,605 square feet are surplus space which should not be a part of the assessed property value. In addition, despite the Taxpayer's decision not to utilize the Income Approach to value the property, the appraisal adds $495,407 to the replacement costs of site and building improvements as "Entrepreneurial Profit".

> Thus, there is a wide disparity between the two appraisals. On the one hand, the Taxpayer's appraisal results in an assessed value for 2019 Tax Year purposes of $593,181, while the Assessor's appraisal results in an assessment of $2,527,320 for purposes of determining the tax liability for Tax Year 2019.[11]

From this discussion, the Board concluded:

> While a mere recounting of methodology and results set forth in the Taxpayer's appraisal and excellent argument that such methodology and results are logical and make good sense are, indeed, helpful in giving the Board an understanding of the Taxpayer's position, those things do not meet the high burden of "clear and convincing" evidence that the Assessor's methodology and resulting assessment is erroneous. The

---

[11] The assessed values calculated in the parties' appraisals are based upon sixty percent of the fair market value, which percentage is provided for in Article X, Section 1b of the West Virginia Constitution and West Virginia Code § 11-3-1(a) (2014).

6

Taxpayer's presentation, especially with regard to the extraordinary functional obsolescence, was lacking in evidentiary justification and was more conclusory than supportive.

On the other hand, the Assessor's presentation was cogent, comprehensive and persuasive. The Taxpayer failed to rebut the Assessor's findings or make any effective undermining of the methodology used or the assessment determination resulting.

Government Properties appealed the Board's determination to the circuit court, which reversed the Board. The circuit court's order adopted Government Properties' proposed findings of fact and conclusions of law, adopting in total the appraisal offered by Government Properties and rejecting the cost approach valuation established by the Assessor. The circuit court found that the Government Properties appraisal was superior to the Assessor's appraisal, holding:

Here, the Appraisal and [Government Properties'] testimony related thereto presents an extremely in-depth and detailed analysis of the Property, the factors listed in the Rules, and the market value of the Property as of July 1, 2018[,] by development of both the cost and comparable sales approach. The analysis and data presented by the comparable sale approach is particularly important to the determination of the true and actual value for the Property in this case and properties involved in all tax assessment appeal cases, and its substantial impact on the determination of a Property's market value is clearly stated in Rules section 3.1.1. [W. Va. C.S.R.] § 110-1P-3.1.1 (when determining market value, "primary consideration shall be given to the trends of price paid for like or similar property in the area of locality in which the property is situated[."])

….

7

As discussed in detail above, the Appraisal and testimony related thereto are more than adequate to meet the burden of 'clear and convincing evidence' to show that the Assessor's methodology and resulting Assessment is erroneous. The evidence presented to the Board regarding the Property's functional obsolesce as considered in the Appraisal's cost approach was more than sufficiently supported by evidence related to the sale of numerous comparable properties. In fact, it was supported by evidence which the West Virginia Supreme Court considers to be the best evidence available in an assessment: the sale price paid for the Property involved in this case at a sale occurring less than three months before the Hearing date. This evidence is goes [sic] far beyond the 'clear and convincing' standard, and the appraisal consideration thereof to develop the Property's functional obsolescence factor offering the Board valid, substantial and more than enough justification for the Appraisal's cost approach valuation conclusion. Contrary to the Board's creative, albeit misleading and unsupported, description of the Appraisal's functional obsolescence presentation and evidentiary worth, the Appraisal presents a logical and detailed analysis by clear and convincing evidence sufficient to meet the burden of proof imposed on [Government Properties] showing that the Assessor's methodology and resulting Assessment are erroneous. Accordingly, the Board's determination that [Government Properties] failed to meet its burden of proof by is erroneous.

*B. Martinsburg IRS OC Property*

The Martinsburg IRS OC property is located at 295 Murrall Drive in Kearneysville, West Virginia, has a total acreage of 24.59 acres and contains multiple buildings encompassing a total of 122,475 square feet. The property includes an on-site backup power-plant, space to house computer hard drives, and a dedicated chiller plant to cool the computer room space.

8

Based upon its cost-based appraisal, the Assessor determined fair market value of this property for the 2019 tax year to be $26,940,000.00, with an assessed value of $16,164,120.00.[12] Once again, John Streett, the Assessor's commercial appraiser, testified before the Board regarding the methodology used to arrive at this valuation. He stated that the Assessor's Office attempted to obtain data to develop the income approach and market capitalization rate but was unsuccessful. Describing this effort, Streett stated, "we considered the income approach, letters were mailed to valid commercial sales asking for income expense information. The income expense questionnaire of the one valid sale of an office building was not returned to this office so that a capitalization rate could be developed for office field use." Further, Streett testified that to determine an overall market capitalization rate, the Legislative Rule requires "dividing the annual net income level by the current selling price of comparable properties." Because the requested data was not returned to the Assessor's office, it was impossible for Streett to make this calculation. Streett further testified that the methodology ultimately followed by the Assessor, which utilized the cost approach, was in compliance with the law:

> In regards to the Assessor's Office values on this property, Legislative Rule 110 1P was considered and utilized for the 2019 tax year. That legislative rule enumerates a number of elements that shall be considered when doing a commercial appraisal. The majority of those elements are located within the IAS on a property record card, which is the Integrated Assessment System on the property record card.

---

[12] The assessed value represents sixty percent of the fair market value, which percentage is provided for in Article X, Section 1b of the West Virginia Constitution and West Virginia Code § 11-3-1(a) (2014).

....

All three approaches to value were considered by the Berkeley County Assessor's Office, West Virginia Legislative Rule 110 1P 3.2.1 states, in determining an estimate of fair market value, the tax commissioner shall consider and use where applicable three accepted approaches of value, the cost, the income and the market approach. The cost approach was considered for the 2019 tax year, is was [sic] the interior functional and economic obsolescence were taken into consideration. Based upon the definition of functional obsolescence and economic obsolescence, the Berkeley County Assessor's Office does not believe that any adjustments are needed other than the normal depreciation on the improvement.

Martinsburg IRS OC appealed this assessment to the Board. At a hearing before the Board, Martinsburg IRS OC offered its own appraisal, completed by Michael Miller, which found fair market value of this property for the 2019 tax year to be $7,240,000.00, with an assessed value of $4,344,000.00. Miller's appraisal developed a hybrid income and sales comparison approach to value, in contrast to the Assessor's methodology.

The Board found in favor of the Assessor's methodology and valuation stating, "[t]he leased fee valuation urged on the Board by the Taxpayer is not the fee simple valuation required of our Assessor."[13] Further, the Board found:

---

[13] Additionally, on its face, the taxpayer's appraisal says its purpose is to "develop an opinion of the Retrospective Market Value of the subject property's leased fee interest."

The major difference in the two assessments, however, derive from the Assessor's utilization of the Cost Approach to value and the Taxpayer's use of the Income Approach with the Sales Comparison Approach used as its check for reconciliation purposes. The testimony of Mr. Streett noted that the West Virginia Legislature has written into the law a prescription for determining the selection of a capitalization rate in utilization of the Income Approach used by the Taxpayer's appraisal. Rather than follow W.Va. C.S.R. § 110-1P-3.2.1.2, which provides, in pertinent part, that, "The selection of an overall capitalization rate shall be derived from current available market data by dividing annual net income by the current selling price of comparable properties. The present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate,["] the Taxpayer's appraisal indicates that four different techniques were used in development of their overall capitalization rate: (1) Comparable Sales; (2) Competitive Market; (3) Investor Surveys; and, (4) Band of Investment Technique. These techniques, certainly, are appropriate for the more common bank appraisals but, the Assessor is mandated to follow the Legislative Rule in determining a capitalization rate to employ in the Income Approach to value. The data needed to comply with the prescriptive Legislative Rule was not available to the Assessor, as Mr. Streett testified. Nor, in the case of the Sales Comparison Approach, also, utilized by the Taxpayer, were there sufficient comparative sales available within the Berkeley County jurisdiction as required by the Rules to make the meaningful sales comparisons for an appraisal. Lacking such data, the Supreme Court of Appeals of West Virginia has opined that the Assessor is not required to spend time and effort developing an approach to value which does not comply with the Rules.

….

The Taxpayer failed to rebut the Assessor's findings or to effectively undermine the Assessor's use of the Cost Approach to value the property other than to generally indicate that the Cost Approach was not an appropriate approach in this case and to offer the Board the alternative Income Approach. And, while the Board is troubled that a building valued at $30 million in 2005, the strongest sellers' market prior to the 2008

11

recession, is, fourteen years later, appraised by the Assessor at $26,940,200, only $3 million less, without clear and convincing evidence that the Assessor's Cost Approach assessment is erroneous, the Board must affirm such assessment.

Martinsburg IRS OC appealed the Board's determination to the circuit court, which reversed the Board by order dated November 23, 2020. The circuit court fully adopted Martinsburg IRS OC's proposed findings of fact and conclusions of law.[14] Importantly, the circuit court order states:

> Here, the Appraisal and [Martinsburg IRS OC's] testimony related thereto presents an extremely in-depth and detailed analysis of the Property, the factors listed in the Rules, and the market value of the Property as of July 1, 2018[,] by development of both the income and comparable sales approach. The analysis and data presented by the comparable sale approach is particularly important to the determination of the true and actual value for the Property in this case and properties involved in all tax assessment appeal cases, and its substantial impact on the determination of a Property's market value is clearly stated in section 3.1.1 of the Rules. [W. Va. C.S.R.] § 110-1P-3.1.1 (when determining market value, "primary consideration shall be given to the trends of price paid for like or similar property in the area of locality in which the property is situated.["])
>
> ….
>
> As discussed in detail above, the Appraisal and testimony related thereto are more than adequate to prove by clear and convincing evidence that the Assessment for the Property is not accurate. This evidence presented to the Board goes far beyond a general indication "that the Cost Approach was not appropriate" and develops two approaches to value offering the Board much more than simply "the alternative Income

---

[14] The circuit court's conclusions in both the Government Properties case and the Martinsburg IRS OC case, which are quoted in this opinion, are nearly identical.

Approach." To the contrary, it presents a logical and detailed analysis by clear and convincing evidence sufficient to show the Assessment for the Property is not accurate. Accordingly, the Board's determination that Petitioner failed to meet its burden of proof is erroneous.

App. 433.

Based upon the circuit court's findings in both cases, Petitioner appealed. We consolidated these matters as they share common issues of law and fact and set them for argument under Rule 19 of the West Virginia Rules of Appellate Procedure.

## II. STANDARD OF REVIEW

We are guided by the following standard of review for proceedings under West Virginia Code § 11-3-25 (2014):

> "'It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear.' Syl. Pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983)."

Syl. Pt. 1, *Musick v. Univ. Park at Evansdale, LLC*, 241 W. Va. 194, 820 S.E.2d 901 (2018).

> "Upon receiving an adverse determination before the county commission, a taxpayer has a statutory right to judicial review before the circuit court." W. Va. Code § 11-3-25 (1967).

> Judicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act. As we have explained, review before the circuit court is confined to determining whether the challenged property valuation is supported by substantial evidence, or otherwise in contravention of any regulation, statute, or constitutional

13

provision.  Therefore, "our review of a circuit court's ruling in proceedings under § 11-3-25 is *de novo*."

*Musick*, 241 W. Va. at 199, 820 S.E.2d at 906 (internal footnotes omitted).[15]   As noted, the Taxpayer carries a heavy burden in challenging assessments.  "Arbitrary or unjust action by an assessor in fixing the value of land must be shown by clear and cogent proof in order that the complaining taxpayer may be given relief from an allegedly excessive valuation."  Syl. Pt. 2, *Bankers Pocahontas Coal Co. v. Cnty. Ct. of McDowell Cnty.*, 135 W. Va. 174, 62 S.E.2d 801 (1950), *overruled on other grounds by In re Kanawha Val. Bank*, 144 W. Va. 346, 109 S.E.2d 649 (1959).  "'A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such assessment is erroneous.' Syllabus Point 5, in part, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)."  Syl. Pt. 10, *Mountain Am., LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768, 772 (2009).

## III.  ANALYSIS

Mindful of our standard of review, we now discuss the two primary issues raised in this appeal.

---

[15] As we discuss below, the procedure for appealing from a Board of Assessment Appeals decision is the same as the procedure for appealing a Board of Equalization and Review determination. *See*, W. Va. Code § 11-3-24b & 11-3-25.  Many of the cases discussed in this opinion are from appeals of Board of Equalization and Review decisions.

*A. Proper Party to Appeal from Board*

Petitioner argues that in its appeal to the circuit court from the Board, both Taxpayers failed to name the Assessor as a party to their appeals. Specifically, Petitioner avers that the Assessor is the only entity that can grant relief, that the Board, who was the only named party to the appeal to circuit court, could not actually change the assessments at issue, and that the Assessor should have had the opportunity to defend its assessments in the proceeding.

The Taxpayers respond that no statute requires the Assessor be named as a party to an appeal from a Board to circuit court. The Taxpayers correctly note this Court has issued numerous opinions wherein county Assessors were not parties to this type of proceeding and the county commission/council was named instead.[16] In fact, we note that

---

[16] *See, e.g., Bayer MaterialScience, LLC v. State Tax Commissioner*, 223 W.Va. 38, 672 S.E.2d 174 (Kanawha County Commission appeared as party); *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (Cabell County Commission appeared as party); *Central Realty Co. v. Board of Equalization and Review of Cabell County*, 110 W.Va. 437, 158 S.E. 537 (1931); *Gilbert v. County Court of Wyoming County*, 121 W.Va. 647, 5 S.E.2d 808 (1939); *In re Stonestreet*, 147 W.Va. 719, 131 S.E.2d 52 (1963) (defendants were Commissioners of the County Court of Calhoun County); *Tug Valley Recovery Center, Inc. v. Mingo County Commission*, 164 W.Va. 94, 261 S.E.2d 165 (1979) ("The respondents are elected members of the Mingo County Commission, and in this capacity, sat as a Board of Equalization and Review during the month of February

(continued . . .)

1978"); *The Great A & P Tea Co., Inc. v. J. Carney Davis, Assessor of Marion County, West Virginia, and Marion County Board of Review and Equalization*, 167 W.Va. 53, 278 S.E.2d 352 (1981); *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia and East Kentucky Energy Corp. v. County Commission of Webster County, West Virginia*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *Eastern American Energy Corporation v. Robert W. Thorn, Assessor of Wirt County, and C. Richard Boice, Commissioner of the County Commission of Wirt County, Paul Bumgarner, Commissioner of the County Commission of Wirt County, and Harry Matheny, Commissioner of the County Commission of Wirt County, in their Capacities as County Commissioners and in Their Capacities as Members of the County Board of Equalization and Review*, 189 W.Va. 75, 428 S.E.2d 56 (1993); *Western Pocahontas Properties, Ltd. v. County Commission of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993); *In re Elk Sewell Coal*, 189 W.Va. 3, 427 S.E.2d 238 ("Ernest V. Morton, Jr., Pros. Atty., Webster Springs", attorney for Webster County Commission); *Rawl Sales & Processing Co. v. County Commission of Mingo County*, 191 W.Va. 127, 443 S.E.2d 595 (1994); *In re the Petition of Maple Meadow Mining Company for Relief from Real Property Assessment for the Tax Year 1992*, 191 W.Va. 519, 446 S.E.2d 912 (1994) ("Carl W. Roop, Canterbury, Poling & Roop, Beckley, for Raleigh County Commission"); *Bookman v. Hampshire County Commission*, 193 W.Va. 255, 455 S.E.2d 814 (1995); *In re the 1994 Assessments of the Property of Massimo A. Righini, Marilou M. Righini, J. David Magistrelli and Diane Magistrelli*, 197 W.Va. 166, 475 S.E.2d 166 (1996) ("Richard G. Gay, Berkley Springs, for Morgan County Commission"); *In re Tax Assessment Against American Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757 (2000) ("Frances C. Whiteman, Esq., Whiteman, Burdette & Radman, PLLC, Fairmont, West Virginia" is listed as "Attorney for Appellant Marion County Commission").

*Mountain Am.*, 224 W. Va. at 684 n.19, 687 S.E.2d at 783 n.19. *See also Xenia Hotels & Resorts, Inc. v. Kanawha Cnty. Bd. of Commissioners*, No. 20-0068, 2021 WL 1100388

(continued . . .)

16

we have stated, "County commissions have often been made parties to these types of appeals. Indeed, County Commissions have made numerous appearances in these types of appeals before this Court." *Mountain Am.*, 224 W. Va. at 683, 687 S.E.2d at 782. Even so, some cases before this Court have named the Assessor as a party.[17] Still others have named the tax commissioner.[18] Consequently, we have found no case in our research in

_____

(W. Va. Mar. 23, 2021) (memorandum decision); *Tabb v. Jefferson Cnty. Comm'n*, No. 17-0095, 2018 WL 1444286 (W. Va. Mar. 23, 2018) (memorandum decision); *Palley v. Tucker Cnty. Comm'n*, No. 16-0403, 2017 WL 1423166 (W. Va. Apr. 21, 2017) (memorandum decision); *Palley v. Tucker Cnty. Comm'n*, No. 14-0686, 2015 WL 3458348 (W. Va. Jan. 30, 2015) (memorandum decision); *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W. Va. 14, 672 S.E.2d 150 (2008) (Cabell County Commission sitting as Board appeared).

[17] *See Musick*, 241 W. Va. at 194, 820 S.E.2d at 901 (Musick was Monongalia County Assessor); *Rhoe v. Hess*, No. 15-1038, 2016 WL 6819046 (W. Va. Nov. 18, 2016) (memorandum decision) (Hess was Berkeley County Assessor. The Berkeley County Council was also named as a party); *Univ. Park at Evansdale, LLC v. Musick*, 238 W. Va. 106, 792 S.E.2d 605 (2016) (Musick was Monongalia County Assessor); *United Hosp. Ctr., Inc. v. Romano*, 233 W. Va. 313, 758 S.E.2d 240 (2014) (Romano was Harrison County Assessor); *Wright v. Banks*, 232 W. Va. 602, 753 S.E.2d 100 (2013) (Banks was Jefferson County Assessor); *Pope Properties/Charleston Ltd. Liab. Co. v. Robinson*, 230 W. Va. 382, 738 S.E.2d 546 (2013) (Robinson was Kanawha County Assessor); *Shenandoah Sales & Serv., Inc. v. Assessor of Jefferson Cnty.*, 228 W. Va. 762, 724 S.E.2d 733 (2012); *Stone Brooke Ltd. P'ship v. Sisinni*, 224 W. Va. 691, 688 S.E.2d 300 (2009) (multiple Assessors are named as parties); *Tax Assessment Against Purple Turtle, LLC v. Gooden*, 223 W. Va. 755, 679 S.E.2d 587, (2009) (Gooden was Berkeley County Assessor); *New Vrindaban Cmty., Inc. v. Rose*, 187 W. Va. 410, 419 S.E.2d 478 (1992) (Marshall County Assessor named as party); *In re Tax Assessments Against Pocahontas Land Co.*, 172 W. Va. 53, 303 S.E.2d 691 (1983) (Assessor appeared in appeal by counsel); *Great A & P Tea Co. v. Davis*, 167 W. Va. 53, 278 S.E.2d 352 (1981) (Davis was Assessor of Marion County).

[18] *See Settimi v. Irby*, No. 21-0046, 2022 WL 292317 (W. Va. Feb. 1, 2022) (memorandum decision); *United Hosp. Ctr.*, 233 W. Va. 313, 758 S.E.2d 240 (Tax Commissioner named as party); *New Vrindaban*, 187 W. Va. 410, 419 S.E.2d 478 (Tax Commissioner named as party).

which a party has squarely placed before this Court the question of whether an Assessor is a necessary party to an appeal from a Board of Assessment Appeals decision.[19]

<hr>

[19] In each county, under the prior enactment, a Board would sit annually to hear property valuation disputes between taxpayers and the Assessor. *See* W. Va. Code § 11-3-24b (As noted above, this code section has been repealed. This discussion relates to the statutory framework applicable to these appeals.). The Berkeley County Council is statutorily required to sit as the Board. *Id*. Following a decision of the Board, appeals may be taken to the circuit court, "*[a]ny party to the hearing may appeal* the order of the board in the manner provided in section twenty-five of this article for appealing an order of the board of equalization and review." W. Va. Code § 11-3-24b(g) (emphasis added). Such appeals shall be heard in the circuit court "of the county in which the property books are made out. . . ." W. Va. Code § 11-3-25(a). Notice of such appeals must be given to "the prosecuting attorney of the county, whose duty it shall be to attend to the interests of the state, county and district in the matter, and the prosecuting attorney shall give at least five days notice of hearing to the Tax Commissioner." *Id*. "The right of appeal from any assessment by the . . . Board of Assessment Appeals as provided in this section may be taken either by the applicant *or by the state*, and in the case of the applicant, by his or her attorney, or in the case of the state, by is prosecuting attorney or other attorney representing the Tax Commissioner." W. Va. Code § 11-3-25(b) (emphasis added). "*The state* or the aggrieved taxpayer may appeal a question of valuation to the Supreme Court of Appeals if the assessed value of the property is $50,000 or more, and *either party* may appeal a question of classification or taxability." W. Va. Code § 11-3-25(d) (emphasis added).

Additionally, we have previously held that the provisions of West Virginia Code § 11-3-25 we are discussing here and those which allow for appeals from county commission/council determinations contained in West Virginia Code § 58-3-4 (1923) must be read *in pari materia*. *See In re Stonestreet*, 147 W. Va. 719, 726, 131 S.E.2d 52, 56 (1963). Thus, we also look to West Virginia Code § 58-3-4 for guidance as to who must be named in appeals from county commissions/councils to circuit courts. That code section provides, in pertinent part:

> In any case in which an appeal lies under section one of this article *on behalf of a party to a controversy in a county court*, such party may present to the circuit court of the county in which the judgment, order or proceeding complained of was rendered, made or had, or in the vacation of such court, to the judge of such court, the petition of such party for an appeal.

W. Va. Code § 58-3-4 (1923) (emphasis added).

In a similar matter relating to assessments, we have previously held that county commissions/councils are not proper parties to appeals taken under a prior enactment regarding assessment appeals:

> A county court is not a party to an appeal taken under section 7, c. 36, Acts 1891, for reassessment of lands by a landowner, from the decision of a county court refusing to reduce the valuation of his land made by a commissioner under said act, and cannot maintain a writ of error from this court to the decision of a circuit court upon such appeal.

Syl. Pt. 1, *Mackin v. Taylor Cnty. Ct.*, 38 W. Va. 338, 18 S.E. 632 (1893). In *Mackin*, we found that "[t]he case before the lower courts was not a suit. The county court was not a party. The state and the taxpayer were the only parties, in any sense." *Id.*, 38 W. Va. 338, 350, 18 S.E. 632, 636. Additionally, the text of Chapter 36, section 7 of the Acts of 1891 examined in *Mackin* provided:

> The right of appeal from [an order correcting the assessments] made by the county court shall lie to the circuit court, and may be taken either by the applicant or the state . . . *the party desiring to take such appeal* shall have the evidence taken at the hearing of the application certified by the county court.
> …
> [A]ny order or judgment made upon such application shall show that the prosecuting attorney was present and defended the interest of the state.

1891 W. Va. Acts, c. 36 § 7, eff. Feb. 21, 1891.

Based upon the similar language in the 1891 enactment to that contained in the statutes at issue in this appeal, we conclude that the process for an assessment appeal to circuit court as it existed when we decided *Mackin* is substantially similar to the modern

19

process.  However, as we also noted above, there is a long history since *Mackin* of county commissions/councils being named as parties in these cases.  Nonetheless, it is the Assessor who maintains the land books of a county, initially determines the value of the assessments, and presumably defends his or her assessments before Board.  Therefore, the Assessor should likewise be named as a party to an appeal regarding the assessments.  The Board, on the other hand, is the deliberative body whose decision is being appealed.  Accordingly, in order to clarify what has developed into an inconsistent practice in such appeals, in which assessors are named in some appeals and county commissions or councils, serving as the assessment appeal Board, being named in others, we now hold that a party defending an assessment before a Board of Assessment Appeals is the appropriate party, and thus a necessary party, to an appeal of such assessment to the circuit court.

In the case at bar, however, there is no evidence in the record that indicates that Petitioner raised before the circuit court the issue of whether the Assessor was an indispensable party to the proceeding filed in circuit court.  As we have previously stated:

> This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal. *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).
>
> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on

20

> appeal. Finally, there is also a need to have the issue
> refined, developed, and adjudicated by the trial court, so
> that we may have the benefit of its wisdom.

*Id.* at 226, 438 S.E.2d at 18.

*State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009).

During oral argument, counsel for the Petitioner argued that the issue was jurisdictional and, thus not waived. However, the jurisdictional issue raised for the first time at oral argument is one of personal jurisdiction, rather than one of subject matter jurisdiction. There is no question this Court (and the circuit court) had jurisdiction over the subject matter. In such cases, this Court has said, "'[j]urisdiction of the person may be conferred by consent, ... jurisdiction of the subject-matter of litigation must exist as a matter of law.' *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 90, 106 S.E.2d 521, 525 (1958), *overruled on other grounds as stated in Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981)." *Ellithorp v. Ellithorp*, 212 W. Va. 484, 490, 575 S.E.2d 94, 100 (2002). Accordingly, by not raising the issue before the circuit court, Petitioner consented to its jurisdiction, thereby waiving any objection to the Assessor not being named as a party to this action.

## B. Validity of Assessments

Beginning our discussion of the assessments made by the Assessor, we first state the provisions of our Constitution applicable to ad valorem property taxes provide that, "taxation shall be equal and uniform throughout the state, and all property, both real

21

and personal, shall be taxed in proportion to its value to be ascertained as directed by law," W.Va. CONST. art. X, § 1.  However, under Article X, Section 1b of our Constitution, the assessed value of such property is capped at 60% of its value, less than its true and actual value.  *See*, W. Va. CONST. art. X, §1b;  *See also Kline v. McCloud*, 174 W. Va. 369, 377, 326 S.E.2d 715, 724 (1984) ("assessed values, which are recognized under Section 1b of Article X are less than true and actual values.").  Flowing from that Constitutional mandate, our Legislature has codified the definition of "true and actual value:"

> "Value", "market value" and "true and actual value" shall have the same meaning and shall mean the price at or for which a particular parcel or species of property would sell if it were sold to a willing buyer by a willing seller in an arm's length transaction without either the buyer or the seller being under any compulsion to buy or sell.

W. Va. Code § 11-1A-3(i) (1986).

Further, to ensure that taxation is "equal and uniform throughout the state," our Legislature directs county assessors to "appraise all real and personal property in their jurisdiction at fair market value … utilize[ing] the procedures and methodologies established by the Property Valuation Training and Procedures Commission and the

22

valuation system established by the Tax Commissioner." W. Va. Code § 11-1C-7(a) (2017).[20]

When valuing real property, assessors are directed to "consider and use where applicable, three (3) generally accepted approaches to value: (A) cost, (B) income, and (C) market." 110 W. Va. C.S.R. 1P-3.2.1. Guidance regarding each of these methods is contained in the regulations:

> 3.2.1.1. Cost approach. - To determine fair market value under this approach, replacement cost of the improvements is reduced by the amount of accrued depreciation and added to an estimated land value. In applying the cost approach, the Tax Commissioner shall consider three (3) types of depreciation: physical depreciation, functional obsolescence, and economic obsolescence.
>
> 3.2.1.2. Income approach. - A property's present worth is directly related to its ability to produce an income over the life

---

[20] Assessment data is collected by county assessors and shared with the tax commissioner. *See* W. Va. Code § 11-1A-12 (1991). This information is gathered and placed into a computer database:

> All county assessors in West Virginia perform Computer-Assisted Mass Appraisal ("CAMA") and input data collected during their assessment functions into a statewide Integrated Assessment System ("IAS") maintained and administered by the Tax Commissioner. The Tax Commissioner has access to the information in the IAS (and therefore the CAMA files) for purposes of supervision, auditing, and oversight; however, only the county assessors can input or change the data therein.

*Hurlbert v. Matkovich*, 233 W. Va. 583, 587, 760 S.E.2d 152, 156 (2014). Thus, information gathered by assessors through CAMA is inputted into IAS. IAS fulfills the duty imposed upon the tax commissioner to "devise and cause to be established a statewide electronic data processing system network, to facilitate administration of the ad valorem property tax on real and personal property, through the timely sharing of property tax information among county assessors and the tax commissioner." W. Va. Code § 11-1A-21 (1983).

of the property. The selection of an overall capitalization rate shall be derived from current available market data by dividing annual net income by the current selling price of comparable properties. The present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate.

3.2.1.3. Market approach. - The Tax Commissioner shall apply the market approach by considering the selling prices of comparable properties.

110 W. Va. C.S.R. § 1P-3.2.1.1-3.2.1.3. "Where the cost approach to assessments is concerned, the assessor must 'consider' three types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence." *Lee Trace, LLC v. Berkeley Cnty. Council*, No. 16-0239, 2017 WL 1535075, at \*6 (W. Va. Apr. 28, 2017) (memorandum decision). Interpreting this requirement, we have stated it

> [D]oes not require the Tax Commissioner to make any adjustment to the valuations made regarding property because of physical deterioration, functional obsolescence and economic obsolescence. Rather, all that is required of the Tax Commissioner in applying the cost approach to valuation is that the Tax Commissioner will think about or contemplate three types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence.

*Century Aluminum of W. Virginia, Inc. v. Jackson Cnty. Comm'n*, 229 W. Va. 215, 224-25, 728 S.E.2d 99, 108-09 (2012) (citations omitted). This regulation confers broad discretion to the Assessor:

> Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion.

24

Syl. Pt. 5, *In re Assessment Against American Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000).

The Assessor ultimately developed the cost approach to determine value of the Taxpayers' properties. In preparing the assessments, the Assessor sought and was unable to obtain necessary data to develop either the income or market approaches. "When possible, the Tax Commissioner should use the most accurate form of appraisal, but because of the difficulty in obtaining necessary data from the taxpayer, or due to the lack of comparable commercial properties or industrial properties, the choice between alternative appraisal methods may be limited." 110 W. Va. C.S.R. 1P-3.2.2.a. In such cases, this Court has previously concluded that "[a]n Assessor need not perform a useless act of considering an appraisal method where the assessor does not have sufficient data to perform that appraisal method." *Lee Trace, LLC v. Raynes*, 232 W. Va. 183, 193, 751 S.E.2d 703, 713 (2013). In *Lee Trace*, the Assessor testified "that she could not develop a capitalization rate to do an income approach" because she did not have the data necessary to make the calculation. *Id.*, 232 W. Va. at 193, 751 S.E.2d at 713.

In the matter before us, the Assessor's commercial appraiser testified before the Board that he did not have enough data to develop either the income approach or the sales comparison approach. The Assessor then sent out questionnaires to attempt to collect the necessary data. This effort did not generate the data needed to consider either the income or the sales comparison approaches. Thus, because of this lack of data, the

25

Assessor developed the only approach available to him – the cost approach to value. In so doing, he was required to "consider" physical deterioration, functional obsolescence and economic obsolescence. It is clear from the record that the Assessor, through its commercial appraiser, Mr. Streett, considered such factors. With regard to the Government Properties case, Mr. Streett, the Assessor's commercial appraiser, testified that "functional obsolescence and external obsolescence … were taken into consideration. Based upon the definition of functional obsolescence and economic obsolescence, our office did not believe that any adjustments were needed other than normal depreciation on improvement." Similarly, in the Martinsburg IRS OC case, Streett stated, "[b]ased upon the definition of functional obsolescence and economic obsolescence, the Berkeley County Assessor's Office does not believe that any adjustments are needed other than the normal depreciation on the improvement." While the Assessor was required to consider obsolescence, there is no requirement that the Assessor apply such factors in the same manner that the Taxpayers' appraisers urge.

Our law demands that assessments are presumed correct and the Taxpayers clearly did not meet their burden before the circuit court to show their assessments were erroneous. We have previously found, in *Stone Brooke Ltd. P'ship v. Sisinni*, 224 W. Va. 691, 688 S.E.2d 300 (2009), that appraisals developed using the cost approach, when supported by substantial evidence, should be upheld: "[I]t is clear that the Assessors' appraisals, all of which were conducted pursuant to the cost approach, were supported by substantial evidence and, thus, that the ad valorem tax assessments based

26

upon such appraisals were not plainly wrong." *Id*., 224 W. Va. at 701, 688 S.E.2d at 310. The Taxpayers merely offered an alternative value for the properties in question, using opposing methodologies not applied by, and perhaps unavailable to the Assessor. While the Taxpayers certainly had the right to propose their alternative method of assessing the property, such alternative recommendation is insufficient to prove that the Assessor's valuations were not supported by substantial evidence or were otherwise in contravention of any regulation, statute, or constitutional provision. Thus, the circuit court erred in reversing the decision of the Board.

## IV. CONCLUSION

For the foregoing reasons, we reverse and remand these matters to the circuit court to issue an order affirming the Board.

Reversed and remanded.